# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | | |
|---|---|---|
| BONNIE KIRK INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, "JS" | * | CIVIL ACTION NO. 17-1466 |
| VERSUS | * | TERRY A. DOUGHTY |
| MONROE CITY SCHOOL BOARD, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

## SUPERSEDING REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted, [doc. # 4], filed by defendants Monroe City School Board, Brent Vidrine, Roosevelt Rankins, Whitney Martin (incorrectly sued initially as "Whitney Morton"); and W. R. Berkley Corp (initially sued as XYZ Insurance Company).   The motion is opposed.  For reasons set forth below, it is recommended that the motion be granted.

## Background

On November 8, 2017, Bonnie Kirk filed the instant complaint individually, and on behalf of her minor child, "JS," against the Monroe City School Board ("MCSB"); Brent Vidrine, MCSB Superintendent; Roosevelt Rankins, Neville High School Dean of Student Affairs; Whitney Martin, former Neville High School Principal (incorrectly named in the complaint as "Whitney Morton"); and W. R. Berkley Corp (initially sued as XYZ Insurance Company).  Kirk asserted claims under 42 U.S.C. § 1983 for violations of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964,

and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  She also set forth state

law tort claims for defamation and slander.  Kirk requested resulting compensatory, special,

punitive, and exemplary damages; reasonable attorney's fees; costs; interest; and equitable relief.

The court recites the following narrative that was set forth in plaintiff's original

complaint:

> [i]n a continuing saga of events commencing on August 15, 2016, the Neville
> High School Dean of Students Defendant ROOSEVELT RANKINS made an
> announcement for teachers to send all students with dye in their hair to the office.
> All African American males were sent to the office as a result of this
> announcement. "JS", who had dyed his hair over the summer was one of the
> students. Defendants ROOSEVELT RANKINS, WHITNEY [MARTIN], and
> other school officials prevented the minor "JS" from attending class, and eating
> lunch because his hair was dyed blond but allowed white students and female
> students with dye in their hair to attend class.
>
> On August 16, 2016, Plaintiff went to the school and attempted to meet with
> Defendant RANKINS and then with the former principal WHITNEY [MARTIN],
> who advised that they would allow "JS" to go to class contingent upon Plaintiff's
> agreement to change "JS'" hair over the weekend.
>
> Subsequently, Plaintiff met to discuss the situation with Defendant VIDRINE who
> was visiting the school. Defendant VIDRINE pointed out that the school's district
> dress code bars "outlandish" hair colors and asked why "JS"'s hair couldn't be
> one color instead of "two toned." Plaintiff informed Defendant VIDRINE that she
> just saw three white students in the hallway who had dyed hair. Defendant
> VIDRINE stated he would talk with Defendants [MARTIN] AND RANKINS on
> the condition that "JS" would "tone the hair down a bit."
>
> Plaintiff further learned from the MONROE CITY SCHOOL BOARD that there
> were no disciplinary referrals nor dress code policy related to students' hair for the
> 2016-2017 school year and that no other students were disciplined in the school
> during the 2016-2017 school year for their color or dyeing their hair.
>
> Defendant RANKINS ridiculed the minor "JS" by calling him a thug and even
> went so far as to ask him "if he was gay with 'that mess' in his head." RANKINS
> made further comments about "JS" to other students and other school officials,
> stating to them that "JS", "Looked like a thug with that mess in his hair."
> RANKINS continued to ridicule "JS" and made comments to other school

officials that "JS" looked "a fool." RANKINS continued to berate, portray and convey "JS" as a thug and a disrespectful child because of his hair. RANKINS continued with his intimidation and ridicule tactics towards "JS" every other day and even encouraged other students not to talk to "JS", isolating "JS" from his fellow colleagues.

"JS" was one of the managers on the Neville High School football team; however, RANKINS isolated, overlooked, and ignored "JS" while being attentive to and treating other managers with respect.

Plaintiff complained to school officials that "JS" was feeling depressed and sad because he was the subject of ridicule and discrimination by school officials. In retaliation, on November 16, 2016, Defendant RANKINS called "JS" to his office and stated that he was about to, "get his butt out of here," making reference to an incident whereby RANKINS allegedly encouraged a fellow female student to lie and say "JS" committed an unsubstantiated act. Thereby causing "JS" to be suspended on November 14, 2016, from school and face an expulsion hearing which said expulsion was denied on November 30, 2016.

In the interim, "JS" was not allowed to travel to New Orleans with the school's football team for the state championship game because of the alleged unsubstantiated allegation. In March, 2017, "JS" was featured in many articles including the New York Daily News. After this, the school administrators began ostracizing "JS" and ridiculed him even more. "JS" was distraught and traumatized by the actions of Neville High School officials.

Plaintiff filed a complaint with the U.S. Department of Education Office for Civil Rights who launched an investigation and concluded that the MONROE CITY SCHOOL BOARD discriminated and retaliated against Plaintiff in violation of Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments Act of 1972.

(Compl., ¶ A) (with minor modifications).

On March 5, 2018, defendants filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. In support of their motion, defendants argued that, 1) Kirk, in her individual capacity asserted no actionable legal claim against any party; 2) the nature of each defendant's actions was not specifically alleged, or shown that each acted with deliberate indifference or with conscious disregard for any legally protected right under Titles VI and IX; 3)

no official governmental policy or custom of the MCSB was identified as the moving force behind plaintiff's claim; 4) the complaint did not allege that any specific defendant was delegated with indicia of authority to act as a policymaker; 5) no conduct was specified in the complaint as an official action of the MCSB to show that it acted with deliberate indifference to plaintiff's rights under Titles VI and IX; 6) the MCSB, Vidrine, Rankins, and Martin were entitled to qualified immunity; 7) plaintiff could not assert a claim for punitive damages against defendants; and 8) plaintiff's discrimination and tort law claims were time-barred.

On May 29, 2018, the undersigned issued a report recommending that defendants' motion be granted, and that plaintiff's federal law claims be dismissed with prejudice, but that her state law claims be dismissed without prejudice. (May 29, 2018, Report and Recommendation [doc. # 12]).   In so doing, the undersigned found that plaintiff failed to allege facts to plausibly establish that defendants intentionally discriminated against JS on the basis of gender or race. *Id*. However, the recommendation of dismissal was subject to plaintiff's opportunity to seek leave of court to amend her complaint with a proposed pleading that cured the deficient allegations. *Id*.

On June 13, 2018, plaintiff availed herself of that opportunity and filed a motion for leave to amend her complaint, which the court granted. [doc. #s 16-20]. The amended complaint provided, in part, that,

> Plaintiff further amends paragraph A "Facts" to add that All and Only African American males were sent to the office as a result of this announcement. None of the other individuals with dyed hair were rounded up and sent to the office and none of the individuals with dyed hair agreed to un-dye their hair. However, "JS" was singled out and the only student not allowed to attend his class and was subject to repetitive harassment, intimidation and bullying about his hair color by RANKINS and MARTIN. Plaintiff complained to the MCSB Superintendent, Defendant Brent Vidrine and Sam Moore the Child Welfare and Attendance Officer who works for the Monroe City School Board, School Board Members

4

Brandon Johnson and the then President of the MCSB Rodney Mcfarland about MCSB, RANKIN AND MARTIN's discriminatory and retaliatory actions against her son "JS".  Subsequently, Plaintiff filed a grievance with the MCSB.

Plaintiff further adds to the facts that she spoke with Defendant Vidrine, MCSB then president, and other school board members who advised her that there was no direct policy related to blonde hair itself, since it was common for white students and female students to be allowed to wear Blond, purple, red, or gray dyed hair. (Pl. Amend. Compl. [doc. # 20]).

The amended complaint further alleged, *inter alia*:  1) violations of the fourteenth amendment to the United States Constitution; 2) deprivation of rights under 42 U.S.C. §§ 1981 & 1983; and 3) violations of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, stemming from defendants' disclosure of information to the local press about a minor. *Id*.  Plaintiff also formally substituted W.R. Berkley Corporation for the fictitious XYZ Insurance Company.  *Id*.  Finally, plaintiff attached a copy of an August 9, 2017, report issued by the United States Department of Education, Office for Civil Rights (the "OCR Report"), which determined, by a preponderance of the evidence, that Monroe City Schools discriminated and retaliated against J.S. in violation of Titles VI and IX.  (OCR Report, Amend. Compl., Exh. A).

In light of the amended complaint, the District Court referred the matter back to the undersigned for issuance of a supplemental report and recommendation.  (June 21, 2018, Minute Entry [doc. # 22]).  Thereafter, the undersigned ordered the parties to file supplemental memoranda that addressed the amended complaint.  (June 21, 2018, Order [doc. # 22]).  The parties so complied.  [doc. #s 23-27].

In the meantime, J.S. reached the age of majority.  *See* Defs. Suppl. Memo. & Exh. [doc. # 23].  Accordingly, the court accorded Kirk the opportunity to amend her complaint to substitute her son as plaintiff.  (July 25, 2018, Order [doc. # 28]).  On August 10, 2018, Jaylon Sewell, was

substituted as plaintiff.  (Amend. Compl. [doc. #29]).  Thus, the matter is ripe.

### Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ."  Fed.R.Civ.P. 8(a)(2).  Circumstances constituting fraud or mistake, however, must be alleged with particularity.  Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id*.  "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a "context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal, supra*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the

court that actual proof of the asserted facts is improbable, and that recovery is unlikely.

*Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim

if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827

(1989).

When considering a motion to dismiss, courts generally are limited to the complaint and

its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)

(citation omitted). However, courts may rely upon "documents incorporated into the complaint

by reference, and matters of which a court may take judicial notice" – including public records.

*Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted)

(proper to take judicial notice of matters of public record).

## Law and Analysis

### I.      Proper Party Plaintiff

In their motion to dismiss, as supplemented, defendants argued that Bonnie Kirk lacked

standing to assert claims in her own right. However, Jaylon Sewell has since been substituted as

plaintiff, and therefore, this argument is moot.

### II.      Discrimination and Retaliation under Titles VI and IX

a)      General Principles

Title VI of the Civil Rights Act of 1964 states that "[n]o person in the United States shall,

on the ground of race, color, or national origin, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal

7

financial assistance."  42 U.S.C. § 2000d.  Similarly, Title IX of the Education Amendments of

1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).

> The Supreme Court has recognized that,
>
> Congress enacted Title IX in 1972 with two principal objectives in mind:  "[T]o
> avoid the use of federal resources to support discriminatory practices" and "to
> provide individual citizens effective protection against those practices."  The
> statute was modeled after Title VI of the Civil Rights Act of 1964, which is
> parallel to Title IX except that it prohibits race discrimination, not sex
> discrimination, and applies in all programs receiving federal funds, not only in
> education programs.  The two statutes operate in the same manner, conditioning
> an offer of federal funding on a promise by the recipient not to discriminate, in
> what amounts essentially to a contract between the Government and the recipient
> of funds.

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286, 118 S.Ct. 1989, 1997 (1998) (internal
citations omitted).

Thus, because Titles VI and IX "operate in the same manner," case law interpreting one

provision is applicable to the other.  *See Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F.

Supp. 3d 602, 628 n.14 (N.D. Tex.2017).

  b) <u>No Individual Liability under Titles VI and IX</u>

It is manifest that there is no individual liability under Titles VI and IX.  *Muthukumar v.

Kiel*, 478 Fed. Appx. 156, 159 (5th Cir.2012) (Title VI); *Price ex rel. Price v. Louisiana Dep't of

Educ.*, 329 Fed. Appx. 559, 561 (5th Cir.2009); *Plummer v. Univ. of Houston*, 860 F.3d 767, 783

n.12 (5th Cir.2017) ("Liability under Title IX does not extend to school officials, teachers and

other individuals."); *Hundall v. Univ. of Texas at El Paso*, No. 13-0365, 2014 WL 12496895, at

*15 n.23 (W.D. Tex. Feb. 21, 2014) (collecting cases) (Title IX).  Thus, plaintiff's Titles VI and

IX claims against the individual defendants in their individual capacities are subject to dismissal. Moreover, an entity may not be held vicariously liable for an employee's conduct under Titles VI and IX. *Vouchides v. Houston Cmty. Coll. Sys.*, No. 10-2559, 2011 WL 4592057, at \*6–7 (S.D. Tex. Sept. 30, 2011) (and cases cited therein).    Therefore, plaintiff's Title VI and IX claims necessarily are limited to claims that the MCSB, as an entity, discriminated and retaliated against plaintiff.

Furthermore, insofar as plaintiff sued the individual defendants in their official capacities, it is manifest that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).    Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*.

When, as in this case, the local government entity/employer itself is a defendant, i.e., the MCSB, then official capacity claims against specific individuals employed by, or managers of, that entity are redundant and subject to dismissal.  *See Hicks v. Tarrant Cnty. Sheriff's Dep't*, 352 F. App'x 876, 877 (5th Cir. 2009) (citations omitted) (because local government entity was a named defendant, district court did not err in dismissing official capacity claims against its commissioners); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268 (5th Cir.2015) (claim against mayor in his official capacity was treated as claim against the municipality itself); *see also Butler v. Craft*, No. 16-1158, 2017 WL 1366897, at \*6 (W.D. La. Apr. 11, 2017) (collecting cases).

c)   Discrimination Claim against the MCSB

Private individuals may sue under Section 601 of Title VI to obtain both monetary and injunctive relief. *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 252 F. Supp.3d 602, 626 (N.D. Tex.2017) (citing *Alexander v. Sandoval*, 532 U.S. 275, 279, 121 S.Ct. 1511 (2001)). Likewise, Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination to include recovery of monetary damages. *Plummer v. Univ. of Houston*, No. 14-2959, 2015 WL 12734039, at *14 (S.D. Tex. May 28, 2015), aff'd, 860 F.3d 767 (5th Cir.2017) (citation omitted).

A private litigant under Title VI or IX must plead facts to support intentional discrimination. *Price ex rel. Price, supra*; *Pacheco v. St. Mary's Univ.*, No. 15-1131, 2017 WL 2670758, at *14 (W.D. Tex. June 20, 2017) (citing *Fort v. Dallas Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 167072, at *4 (5th Cir. Mar. 11, 1996) (unpubl.)). District courts regularly apply the body of law developed under analogous Title VII provisions to Title VI and IX claims. *See Pacheco, supra*. Thus, in the absence of direct evidence of discrimination, courts apply the *McDonnell Douglas* burden-shifting framework, which requires plaintiff to establish a prima facie case of discrimination, comprised of the following elements: "(1) they are members of a protected class; (2) they suffered adverse action; and (3) they were treated less favorably than similarly situated students." *Silva v. St. Anne Catholic Sch.*, 595 F. Supp.2d 1171, 1182 (D. Kan. 2009). Alternatively, the third factor may be satisfied with facts to indicate that discrimination was a substantial or motivating factor in defendant's actions. *See Pacheco, supra*.

Here, plaintiff alleged that he was an African-American male, and therefore, a member of two protected classes. However, aside from an allegation that all African-American males with

10

dye in their hair were sent to the office, there are no facts to suggest that race or gender was a motivating factor in any material adverse action. In fact, other than plaintiff, "no other students" were disciplined during the 2016-2017 school year "for their color or dyeing their hair." Plaintiff further confirmed in his amended complaint that, following the trip to the office, no student with dyed hair agreed to un-dye their hair. While the court clearly recognizes that singling out members of a protected class can support a claim of discrimination, the only class-wide action taken by Rankins was to have the students sent to the "office." The court is not persuaded, however, that a single trip to the office, without additional ramifications, is sufficient to support an adverse action that resulted in consequent and cognizable harm or damages.

Subsequently, plaintiff was the lone individual of any race or gender singled out by Rankins and Martin by restricting his attendance at class and/or lunch on the first day of school. In other words, there *were* other African-American males who had dye in their hair, but only plaintiff was disciplined. It necessarily follows that *all* students with colored or dyed hair were treated the same – but for plaintiff. This circumstance undermines any inference of intentional discrimination which might have arisen from the purported disparate treatment accorded plaintiff, versus females and white males. Under the factual scenario presented by the complaint, as amended, the court cannot plausibly infer that the individual defendants intentionally discriminated against plaintiff on the basis of gender or race.[1] In the absence of intentional

---

[1] In addition, the alleged adverse action of missing the first day of school does not appear to be sufficiently material to support a suit for damages. The court takes judicial notice of the fact that, traditionally, little substantive instruction occurs on the first day of school.

discrimination by its employees, the MCSB also cannot be liable for any wrongdoing.[2]

Furthermore, under both Titles VI and IX, in cases that do not involve an official policy,[3] damages are not available unless an "appropriate person," that is, an official authorized to institute corrective measures on behalf of the recipient entity, had actual knowledge of the discrimination and failed adequately to respond. *Mohamed, supra*; *Gebser, supra*. Furthermore, "[w]here a school district's liability rests on actual notice principles . . . the knowledge of the wrongdoer himself is not pertinent to the analysis." *Gebser, supra* (citing Restatement § 280).

Here, plaintiff alleged that the saga began when Roosevelt Rankins and Whitney Martin prevented him from attending class and eating lunch on the first day of school because his hair was dyed blond. The next day plaintiff met with MCSB Superintendent Brent Vidrine and advised him of Rankins and Martin's actions. Vidrine stated that he would talk with Rankins and Martin if plaintiff would tone his hair down a bit. Thereafter, plaintiff does not allege that he changed his hair color or was prohibited from attending school. Therefore, there are no allegations that the MCSB had knowledge of the alleged discriminatory treatment, but thereafter, failed to take action.[4]

---

[2] The court recognizes that the OCR Report found evidence of intentional discrimination. However, the OCR relied on anonymous statements that recounted non-specific discussions that Rankins had, in passing, with other students regarding their hair.

[3] Plaintiff admitted that there was no dress code policy related to students' hair for the 2016-2017 school year.

[4] The court notes that the OCR Report held Monroe City Schools responsible for the actions of Rankins and Martin. However, the OCR apparently attributes conduct of school employees to the school board on a much more lenient basis than the courts' "actual notice"requirement for damages. *See Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 658 n.6 (5th Cir.1997).

Defendants further argue that plaintiff's claims are time-barred. Statutes of limitations serve as absolute bars to suit. *Nottingham v. Richardson*, 499 Fed. Appx. 368, 375 (5th Cir.2012). Titles IX and VI are treated like 42 U.S.C. § 1983 for limitations purposes. *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir.2015) (Title IX); *see also Price v. Hous. Auth. of New Orleans*, No. 01-3016, 2003 WL 22038409, at *2 (E.D. La. Aug. 27, 2003) (Title VI). Like § 1983, there is no federal statute of limitations for actions brought pursuant to Titles VI and IX. *Id.* Therefore, "section 1983 actions borrow the forum state's general personal injury limitations." *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir.1999) (citing *Owens v. Okure,* 488 U.S. 235, 243-48 (1989)) (emphasis added). "In Louisiana, the applicable section 1983 limitation is one year." *Id*. (citing *inter alia*, Louisiana Civ. Code Ann. art. 3492).

Nonetheless, "[f]ederal law determines . . . when a section 1983 cause of action accrues, and it accrues when the aggrieved party knows, or has reason to know of, the injury or damages which form the basis of the action." *Mejia, supra* (citing *Piotrowski v. City of Houston,* 51 F.3d 512, 516 (5th Cir.1995)). Thus, "if the plaintiff knows of the injury and the connection between the injury and the defendant's actions, or if the circumstances would lead a reasonable person to investigate the matter further, then the cause of action has accrued." *Id.*

Here, it is manifest that plaintiff's federal cause of action for the alleged discriminatory action of being sent to the office and missing the first day of school accrued on August 15, 2016, – the date that it occurred. Plaintiff, however, did not assert his federal law claim until he filed the instant suit more than one year later. By then, of course, it was too late. Accordingly, his claims under Titles VI and IX stemming from actions that took place on, or before August 15,

2016, as well as his parallel claims under § 1983 and 42 U.S.C. § 1981[5] are untimely on the face

of the complaint, and subject to dismissal on that basis.[6]

        d)      <u>Harassment/Hostile Environment Claim against the MCSB</u>

       Plaintiff further alleged in his complaint that Rankins called him a "thug," and asked him

"if he was gay with that mess in his head." Rankins continued to berate and portray plaintiff as a

---

[5] For claims arising under the pre-1991 version of 42 U.S.C. § 1981, courts apply the general statute of limitations governing personal injuries in the forum state, i.e., the same limitations period as for § 1983 claims. *Grigsby & Associates, Inc. v. City of Shreveport*, 294 F. Supp.3d 529, 538–39 (W.D. La. 2018) (citations omitted). In 1990, however, Congress created a general four-year limitations period for federal civil actions. *Lewis v. City of Shreveport*, No. 16-1115, 2018 WL 752362, at *5 (W.D. La. Feb. 7, 2018) (citing Judicial Improvements Act of 1990, Pub. L. 101-650, § 313(a), 104 Stat. 5114 (codified at 28 U.S.C. § 1658 (2012)). Subsequently, the Supreme Court held that causes of action authorized by the 1991 amendment to § 1981 are governed by the four-year limitations period. *Id.* (citing Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004)).

Here, however, there is no indication that plaintiff's § 1981 claim derives from the 1991 amendment to § 1981. Accordingly, plaintiff's § 1981 claim is subject to a one year statute of limitation.

[6] In his brief, plaintiff argued that the limitations period was equitably tolled while he exhausted administrative remedies with the OCR. However, exhaustion of Title IX and Title VI administrative remedies is not required before one files a private action. *Kling v. Los Angeles Cty.*, 633 F.2d 876, 879 (9th Cir.1980) (citing *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946 (1979)). Accordingly, plaintiff's cause of action was not tolled during the pendency of the administrative investigation.

Plaintiff further invoked Louisiana's ancient civilian doctrine of *contra non valentem agere nulla currit praescriptio* where "in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues." *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321 (La. 1979) (citations omitted). However, aside from citing its provisions, and mentioning exhaustion of administrative remedies, he makes no effort to demonstrate its applicability.

In this court's prior report and recommendation, the undersigned noted the potential applicability a continuing injury to defer accrual of the cause of action. Plaintiff, however, did not invoke that theory. Moreover, "[u]nder the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir.2003). Here, the single day suspension from attending class was a discrete act that is not subject to the continuing violations doctrine.

thug and disrespectful child because of his hair.  He continued with his intimidation and ridicule tactics towards plaintiff every other day, and encouraged other students not to talk to him. Thereafter, on an unspecified date,[7] plaintiff's mother complained about Rankins' conduct to MCSB Superintendent Vidrine, MCSB Child Welfare and Attendance Officer Sam Moore, MCSB member Brandon Johnson, and then MCSB President Rodney McFarland.

To establish a claim for a school's failure to respond appropriately to gender or racial-based harassment (at least in the related, arguably less egregious context of student-on-student context) the plaintiff must show that:  "(1) the sexual or racial harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"; (2) the district had actual knowledge of the sexual harassment; and (3) it acted with deliberate indifference to the harassment.  *See Watkins v. La Marque Indep. Sch. Dist.*, 308 Fed. Appx. 781, 783 (5th Cir.2009) (discussing sexual harassment).

 In this case, however, plaintiff does not plausibly allege that the harassment was based on gender or race, as opposed to his own particular version of dyed hair.  Indeed, there are no allegations in the complaint that Rankins harassed any other student with dyed hair on account of the student's race or gender.  Furthermore, on its face, the term "thug" is race neutral.  *Hayes v. Cablevision Sys. New York City Corp.*, No. 07-2438, 2012 WL 1106850, at *9–10 (E.D. N.Y. Mar. 31, 2012) (citing *Random House Webster's College Dictionary* (2d ed.1997).  Similarly, while use of the word "gay" may be objectionable in a particular context, it is not inherently

---

[7]  The date apparently was before November 16, 2016, because that is the date that Rankins purportedly retaliated against plaintiff for his mother's having complained about his treatment.  *See* discussion, *infra*.

offensive.  *Sinn v. Daily Nebraskan*, 638 F. Supp. 143, 145 (D. Neb.1986), *aff'd sub nom. Sinn v. The Daily Nebraskan*, 829 F.2d 662 (8th Cir.1987).

To be actionable, the harassment must have had a "concrete, negative effect on the victims' education, such as creating disparately hostile educational environment relative to [the victim's] peer[s], forcing the student to change his or her study habits or to move to another district, or lowering the student's grades.*"  Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409–10 (5th Cir.2015) (internal citations and quotation marks omitted).  While Rankins' conduct certainly was inappropriate and unprofessional, and made plaintiff feel "depressed and sad," there are no allegations that it materially affected his educational opportunities.  *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir.2011).

Finally, according to the complaint, once plaintiff complained to MCSB officials on an unspecified date about Rankins' conduct, plaintiff does not allege that Rankins continued to harass him.[8]  Therefore, plaintiff failed to allege facts plausibly to show that the MCSB was deliberately indifferent to Rankins' harassment – once "appropriate persons" were made aware of the conduct.

e)     Retaliation Claim against the MCSB

Plaintiff further contends that defendants retaliated against him when his mother complained about the alleged discrimination that he was facing at school.  In interpreting Title

---

[8]  Plaintiff also alleged that unnamed school officials began to ostracize and ridicule him in March 2017 when he was featured in many news articles.  However, plaintiff did not specify who these officials were, precisely what they did or said, or that their treatment materially affected his educational opportunities.  Furthermore, plaintiff did not allege or show that the actions of these unspecified officials were brought to the attention of an "appropriate person" at the MCSB, sufficient to give it "actual notice."

16

IX, and thus, by extension race discrimination under Title VI, the Supreme Court has recognized that "retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74, 125 S.Ct. 1497, 1504 (2005). Therefore, "when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Id.*[9]

Here, plaintiff alleged that when his mother complained to unidentified "school officials" about the ridicule and discrimination that he was suffering at the hands of school officials, Rankins retaliated against him on November 16, 2016, by encouraging a female student to lie and say that he had committed an "unsubstantiated act."

The complaint, however, does not identify any "appropriate person" at the MCSB with whom plaintiff's mother spoke concerning Rankins and Martin's retaliatory actions. To the contrary, following a suspension pending investigation of the "unsubstantiated act" that Rankins purportedly instigated, plaintiff apparently was cleared of the charge at an expulsion hearing a little over two weeks later. In other words, once the retaliatory conduct was brought to the attention of an "appropriate person," the MCSB did not display deliberate indifference to the conduct.

Plaintiff complains that, because of the pendency of the "unsubstantiated allegation," he was not permitted to travel to New Orleans with the school football team for the state

---

[9] In so deciding, the Court eschewed any need to rely on the agency's implementing regulations. *Id.*

championship game.  Given the indeterminate status of the charge, however, it is neither

discriminatory nor retaliatory for the MCSB to limit participation in extracurricular activities,

particularly while a student is suspended.  In other words, there are no allegations that the MCSB

treated plaintiff differently than any other student who was the subject of an allegation that

ultimately proved to be "unsubstantiated."  *See Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d

398, 415 (5th Cir.2015).

### III.    Discrimination and Retaliation Claims under §§ 1981 & 1983

In his amended complaint, plaintiff alleged that defendants violated his rights, including

those secured by the Fourteenth Amendment pursuant to 42 U.S.C. §§ 1981 and 1983.  "To state

a claim of racial [and gender] discrimination under the Equal Protection Clause and section 1983,

the plaintiff 'must allege and prove that [(1) he or she] received treatment different from that

received by similarly situated individuals and that [(2)] the unequal treatment stemmed from a

discriminatory intent.'"  *Fennell, supra* (citation omitted).[10]

It is manifest, however, that a local government entity or municipality is not subject to

liability under § 1983 by virtue of the doctrine of respondeat superior.  *O'Quinn v. Manuel*, 773

F.2d 605, 608 (5th Cir.1985).  Instead, to impose § 1983 liability against a government entity for

the misconduct of one of its employees or officers, plaintiff must demonstrate that the

constitutional deprivation was caused by a policy or custom of the entity.  *Kohler v. Englade*,

470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S.

---

[10]   Also, the Equal Protection Clause of the Fourteenth Amendment does not support a §
1983 claim for retaliation.  *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp.3d 553,
568 (W.D. La.2014) (citations omitted); *Smith v. Mississippi State Univ.*, 2018 WL 934859, at *5
(N.D. Miss. Feb. 16, 2018) (citations omitted).

658, 690-691, 98 S.Ct. 2018, 2036 (1978)).[11]  Specifically, a plaintiff must identify (a) a

policymaker, (b) an official policy or custom or widespread practice, and (c) a violation of

constitutional rights whose "moving force" is the policy or custom.  *Monell*, 436 U.S. at 694.[12]

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal

policy or established custom rests upon the plaintiff."  *McConney v. City of Houston*, 863 F.2d

1180, 1184 (5th Cir. 1989).

Plaintiff contends that the requirements of *Monell* are met pursuant to the OCR's finding

that the MCSB violated Titles VI and IX.  However, the OCR confirmed that the MCSB did not

discipline any students in the 2016-2017 school year for their hair color or dyeing their hair.

(OCR Report, Amend. Compl., Exh. A).  The OCR also made no findings regarding any policy

or custom of harassment or hostile school environment.  *Id.*[13]

Insofar as plaintiff intended to impose § 1983 liability against the individual defendants in

their individual capacities, the court observes that "[t]o state a claim under § 1983, a plaintiff

must (1) allege a violation of rights secured by the Constitution or laws of the United States and

(2) demonstrate that the alleged deprivation was committed by a person acting under color of

---

[11]  Therefore, "isolated unconstitutional actions by municipal employees will almost never trigger liability," but rather "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."  *Fennell, supra*.

[12]  For purposes of *Monell* liability, "[t]he final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority does not make the employee a final policymaker."  *Lee v. Morial*, No. 99-2952, 2000 WL 726882, at *2 (E.D. La. June 2, 2000).  Louisiana law designates the school board as the official policymaker for Monroe City Schools.  La. R.S. § 17:81.

[13]  The court reiterates that it is apparent that the OCR imputed liability for Rankins' actions to the MCSB, on the basis of something significantly less than "actual notice."

state law." *Leffall v. Dallas Independent School District*, 28 F.3d 521, 525 (5th Cir. 1994). The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all. *Id. Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

In their motion to dismiss, defendants invoked qualified immunity, which nominally is characterized as an affirmative defense.[14] However, once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id.* "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

Earlier in this opinion, the undersigned found that plaintiff failed to allege facts to support intentional racial or gender discrimination or harassment. *See* discussion, *supra*. Accordingly, his equal protection claim necessarily suffers the same fate as his unsuccessful Title VI and IX

---

[14] In their motion, defendants also invoked qualified immunity on behalf of the MCSB. The defense of qualified immunity, however, does not apply to either municipalities or government officials sued in their official capacities. *Simmons v. City of Mamou*, No. 09-0663, 2010 WL 4291508, at *3 (W.D. La. Oct. 26, 2010).

claims.[15]

      Section 1981 provides, in pertinent part, that

      [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Section 1981, however, does not provide a separate cause of action against local government entities. *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 462 (5th Cir.2001) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S.Ct. 2702 (1989)). Instead, violations of civil rights under § 1981 must be asserted against state actors under § 1983. *Id.* Here, however, plaintiff did not assert his § 1981 claim against the MCSB via § 1983. In any event, he did not advance a theory of discrimination stemming from one of the activities enumerated in the statute.

      Alternatively, plaintiff may be able to assert a § 1981 suit against a government employee acting in his or her individual capacity. *See Oden*, 245 F.3d at 470 n.5. To establish an individual capacity claim for discrimination under § 1981, "a plaintiff must allege facts in support of the following elements: (1) that the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *McNulty v. J.C. Penney Co.*, 305 Fed. Appx. 212, 217 (5th Cir.2008). Again, however, at minimum, plaintiff's claim falters on the

---

[15] Having found that plaintiff did not allege facts to support a constitutional violation, the court need not reach the second step of the qualified immunity analysis. However, *were* the court to reach that step, it would find that it was clearly established in August 2016 that school officials could not discriminate or harass students on the basis of race or gender. *See Fennell v. Marion Indep. Sch. Dist.*, 963 F. Supp.2d 623, 635–36 (W.D. Tex.2013)

intent element of his cause of action.  *See* discussion, *supra*.

## IV.   FERPA

In his amended complaint, plaintiff alleged that the MCSB, its officials, and employees violated the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g.  Be that as it may, there is no private cause of action under FERPA.  *Tarka v. Franklin*, 891 F.2d 102, 104 (5th Cir.1989).  FERPA also is not enforceable pursuant to 42 U.S.C. § 1983.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276, 122 S.Ct. 2268, 2271 (2002).

## V.   W. R. Berkley Corporation

In his amended complaint, plaintiff alleged that W. R. Berkley Corporation was the insurer of MCSB.  However, the court's having determined that plaintiff does not state a plausible claim for relief under federal law against the MCSB, and its employees, this finding necessarily precludes recovery against W. R. Berkley Corporation as the MCSB's insurer.  *See e.g., Bolton v. Tulane Univ. of Louisiana*, 692 So.2d 1113, 1125 (La. App. 4th Cir. 1997); *Carlisle v. State, Through Dep't of Transp. & Dev.*, 400 So.2d 284, 287 (La. Ct. App.1981).

## V.   Remaining State Law Claims

When, as recommended here, all claims which conferred federal subject matter jurisdiction are dismissed,[16] the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367.  In fact, this is the general rule.  *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  The undersigned further observes that interpretation and application of state law tort claims for defamation and slander

---

[16]  The court does not discern any basis for the exercise of diversity jurisdiction, 28 U.S.C. § 1332.

remain an issue within the particular province and expertise of the state courts.  Accordingly, the twin interests of comity and efficiency dictate that the state law claims be dismissed without prejudice.  28 U.S.C. § 1367(c).

<u>**Conclusion**</u>

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations set forth in plaintiff's complaint, as amended.  *See Iqbal, supra*.  Plaintiff's remaining allegations contain no facts sufficient to confer plausibility upon his claims.  *Id.*  Instead, the complaint, as amended, remains no more than "a formulaic recitation of the elements of a cause of action," which does not satisfy the Rule 8 pleading standard.  *Id.*  Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.[17]  Accordingly,

IT IS RECOMMENDED that defendants' motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 4] be GRANTED, and that plaintiff's federal claims be DISMISSED, WITH PREJUDICE.  FED. R. CIV. P. 12(b)(6).[18]

_____

[17]  Ordinarily, the court should accord plaintiff the opportunity to amend his complaint to state a claim for relief.  However, the court already permitted plaintiff to amend his complaint once, but he fared no better the second time around.  At this juncture, the court is not confident that plaintiff possesses any additional information to support his claims, and thus further amendment would prove futile.

[18]  To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties.  *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties).  In any event, the court possesses the inherent authority to dismiss a party sua sponte.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

IT IS FURTHER RECOMMENDED that plaintiff's remaining claims arising under the laws of the State of Louisiana be DISMISSED, WITHOUT PREJUDICE.  28 U.S.C. § 1367(c).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have  **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 24th day of August 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

24