UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**BONNIE KIRK ET AL**            **CASE NO. 3:17-CV-01466**

**VERSUS**            **JUDGE TERRY A. DOUGHTY**

**SCHOOL BOARD CITY OF MONROE ET AL**            **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment [Doc. No. 81] filed by the Monroe City School Board ("MCSB") on September 9, 2021. An Opposition [Doc. No. 84] was filed by Plaintiff Jaylon Sewell ("Sewell") on October 1, 2021. A Reply [Doc. No. 85] was filed by the MCSB on October 8, 2021.

For the reasons set forth herein, the MCSB's Motion for Summary Judgment is GRANTED.

**I.    BACKGROUND**

On November 8, 2017, Bonnie Kirk ("Kirk"), individually and on behalf of her minor child, "JS"[1], filed a Complaint against the MCSB alleging Sewell was disciplined by the MCSB on the first day of school at Neville High School during the 2016-2017 school year for violating the MCSB's dress code, which prohibited hair dyed outlandish colors. Sewell alleged he wore a "two-toned" blonde hairstyle and was not allowed to attend class on the first day of school because of his dyed hair.

Sewell further alleged that despite other students of all races wearing dyed hair to school, he was the only student disciplined. He also alleged that his mother, Kirk, met with MCSB

---

[1] Sewel was substituted as Plaintiff for Bonnie Kirk on August 10, 2018 [Doc. No. 33].

Superintendent Brent Vidrine ("Vidrine"), and Neville High School Principal Whitney Martin ("Martin") on the second day of school about the incident. Kirk allegedly told Vidrine and Martin that she believed school administrators were discriminating against Sewell because he was an African American male.

After Sewell returned to school, he alleged that he was ridiculed and/or harassed by Neville High School Dean of Students, Roosevelt Rankins ("Rankins"). Sewell alleged he was harassed every other day by Rankins calling him a "thug," a "fool," saying that he "was gay with that mess in his head," and by discouraging other students to talk with him.

Sewell further alleged Rankins encouraged a female student to lie and accuse him of sexual assault, which resulted in Sewell being recommended for expulsion. At the expulsion hearing, Sewell alleged that the MCSB expulsion committee voted not to expel him.

Sewell filed suit against the MCSB under Title VI and Title IX under the Civil Rights Act of 1964, U.S.C. §1983, U.S.C. §1981, the Family Educational Rights and Privacy Act ("FERPA"), and for claims under Louisiana law.

A Motion to Dismiss for Failure to State a Claim [Doc. No. 4] was filed by the MCSB on March 5, 2018. A Superseding Report and Recommendation [Doc. No. 34], which recommended granting the MCSB's Motion to Dismiss, was adopted by this Court on September 7, 2018 [Doc. No. 36], which resulted in the dismissal of all of Sewell's claims.

Sewell appealed the decision [Doc. No. 37] and on October 2, 2020 [Doc. No. 38], the United States Court of Appeals for the Fifth Circuit affirmed the dismissal with the exception of Sewell's harassment claims under Title VI and Title IX of the Civil Rights Act of 1964. The Title VI and Title IX harassment claims were remanded to this Court.

Therefore, Sewell's remaining claims are harassment claims against the MCSB under Title VI (42 U.S.C. 2000d) and under Title IX (20 U.S.C. 1681-1688). The MCSB alleges in its Motion for Summary Judgment that it is entitled to summary judgment dismissing these claims.

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson,* 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

B.   **Title VI and Title IX**

Title VI prohibits race discrimination in all programs receiving federal funds. Title IX prohibits sex discrimination in educational programs receiving federal funds. The applicable statutes read:

4

### 1. 41 U.S.C. § 2000d

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

### 2. 20 U.S.C.A. § 1681

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

These statutes are interpreted in the same fashion. *Cannon v. University of Chicago*, 441 U.S. 677, 696 (1979). Title IX directs federal agencies that distribute education funding to establish requirements to effectuate the nondiscrimination mandate and permits the agencies to enforce those requirements through any means authorized by law, including ultimately the termination of federal funding. *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 280-81 (1998).

**C. Actual Notice**

In addition to Sewell being required to prove he was discriminated against due to harassment, race, or sex he also is required to prove that an "appropriate person" – an official authorized to institute corrective measures – had "actual knowledge" of the discrimination and responded with "deliberate indifference." *Id.*

A school district can be liable for harassment under Title IX, (and Title VI) only if a school official who had actual knowledge of the abuse was vested by the school with the duty to supervise the employee and the power to take action that would end such abuse and failed to do so. *Rose H. v. San Elizario Indp. Sch. Dist.*, 106 F.3d 648, 660 (5th Cir. 1997).

The "appropriate person" in this case would be Superintendent of Schools for the Monroe City School District, Brent Vidrine. La. R.S. 17:81, 17:443 and 17:444. Therefore, the question

is whether Vidrine had "actual notice" of the discrimination and responded with "deliberate indifference."

"Actual notice" requires a showing that the "appropriate person" knew of the underlying facts indicating a sufficiently substantial danger and was aware of the danger. *Farmer v. Brennan,* 511 U.S. 825 (1994). "Deliberate indifference" is defined as recklessness in disregarding a risk of harm that is actually known. *Id.* at 835-38.

In MCSB's Interrogatories Sewell was asked to detail the conduct that constituted harassment in violation of Title VI and Title IX. In Sewell's Response to Interrogatories No. 2, 3, 4 and 5, [Doc. No. 81-6], Sewell listed:

- being verbally ridiculed every other day, which deprived him of educational benefits*;*
- encouragement by Rankin to have a female student lie about a sexual assault;
- discouraging classmates from talking with him;
- degrading name calling by Rankin and then Principal Dr. Christella Dawson ("Dawson") throughout the school year; commencing on August 15, 2016;
- harassment by Rankin by not allowing Sewell to go to class and eat lunch;
- verbally abusing Sewell;
- frivolously writing him up due to his two-toned blonde hair;
- Rankin frivolously recommending Sewell for suspension;
- not being allowed to participate with the Neville football team to attend the State Championship game as a team manage;
- Dawson not allowing Sewell to help her set up for assemblies, and making rude, condescending and disrespectful statements toward him.

Sewell also alleged that Rankin encouraged students to bully and harass him in March, 2017. Additionally, Sewell stated that his mother spoke with Dawson, Rankin, Martin, Vidrine, MCSB President Rodney McFarland, MCSB Member Brandon Johnson, former MCSB Member Brenda Shelling ("Shelling"), and Sam Moore ("Moore"), Director of Child Welfare and Attendance, about Sewell being the subject of harassment, discrimination, bias, and bullying.

In the Affidavit of Vidrine [Doc. No. 81-7], Vidrine stated he was Superintendent of Schools for the Monroe City School District (which includes Neville High School) from August 1, 2016 through May 31, 2017, and all dates relevant in Sewell's lawsuit.

Vidrine stated that his only knowledge of receiving a complaint about Sewell at Neville High School was on August 16, 2017, during a hallway encounter with Kirk. Vidrine stated this led to a meeting between Kirk, Vidrine, and the staff on campus. Since that time, Vidrine stated he has had no knowledge of alleged harassment of Sewell at Neville High School.

In the Affidavit of Shelling [Doc. No. 84-2], she states she was a member of the MCSB from 2015 to 2018. She received two complaints from Kirk, one in August 2016, which was the initial complaint, and the second in November 2016. In the November 2016 complaint, Kirk told Shelling that her son was being harassed and retaliated against by Neville High School officials. Shelling stated she spoke with Vidrine about the complaints. She also stated that Vidrine knew about the complaints but did not offer any response.

The Deposition of Jason Sewell [Doc. No. 84-3] taken on August 20, 2021 was attached to the Opposition. Sewell was present when his mother spoke to Vidrine on August 16, 2016. Sewell overheard his mother asking Vidrine why he was being called out of class and not allowed to start school off like everyone else.

The Deposition of Kirk [Doc. No. 84-4] taken on August 20, 2021 was attached to the Opposition. Kirk talked with Vidrine on August 16, 2016, at which time they discussed why she allowed Sewell to dye his hair. Kirk stated she told Vidrine that Sewell was not violating any school rules.

In the deposition of Moore [Doc. No. 84-6], Moore testified he went to Neville High School as directed by the superintendent in reference to Sewell. He testified that during his

7

meeting with Dawson, there was a phone conversation between Dawson and Vidrine about Sewell.

Attached to the Opposition as [Doc. No. 84-7] is an email allegedly written by Kirk to Vidrine on December 7, 2016, in relation to Sewell not being allowed to go to the state championship game with the Neville football team. Kirk stated she did not understand why the continual harassment and bullying of Sewell was being tolerated. She also asked Vidrine to talk with his administrators and tell them that bullying and harassment of students by administrators would not be allowed in his district.

The Deposition of Vidrine [Doc. No. 84-5] was taken on July 15, 2021. Vidrine admitted to talking with Kirk on August 16, 2016 about the incident involving Sewell's hair. Vidrine stated Kirk became very abusive in language to him. He stated he never discussed any bullying or harassment of Sewell with other school officials. Vidrine also testified he was not aware that Rankins was verbally harassing and abusing Sewell.

Vidrine was aware that Sewell had been suspended in regard to an incident involving a female student at Neville. Vidrine does not recall any other conversations with Kirk since August 16, 2016.

After reviewing the evidence presented, the Court finds there are material issues of fact whether Vidrine received "actual notice" of the harassment allegations.

### D. Intentional Discrimination Race/Gender

For harassment to be actionable under Title VI or IX, it must be intentional. *Rowinsky v. Bryan Indep. School Dist.,* 80 F.3d 1006 (5th Cir. 1996), cert. den. 519 U.S. 861 (1996). Therefore, Sewell has the burden of proving intentional harassment by the MCSB because of discrimination based upon race or sex.

In his deposition Sewell testified that although he initially saw the incident involving his dyed hair as race based (he saw nothing but African American males in the office while white students with dyed hair were not disciplined), the harassment against him was just because he was being defiant. Sewell stated, "I feel like it started as race as I saw it – as I see it. It started as race and then just, okay, well, he's just being defiant. So that's why I feel like it was, you know, opinion because I just didn't --- I didn't do it. [Doc. No. 81-4 p.90 lines 17-21].

Additionally, when questioned by his own attorney whether he thought he was being harassed due to his gender, Sewell stated, "No ma'am, I don't see it as gender. I was just saying a me thing because I didn't, you know, buckle under the things that he had already said verbally to everyone. I didn't buckle and conform to that." [Doc. No. 81-4, p.93 lines 11-13; p. 95 lines 1-4].

Sewell argues in his Opposition that, as a lay person, he did not understand the legal principles regarding his claims, but his testimony is sufficient for claims of intentional discrimination based upon race and gender. The deposition reveals Sewell is in his fourth year of college and scheduled to graduate in the fall of 2022.

The claims for intentional discrimination and retaliation based on race or gender were previously dismissed. The only claims remaining before this Court are Title VI and Title IX claims based on harassment.

The testimony about only African American boys being sent to the office on the first day of the 2016-17 school year at Neville High School relates to claims that have already been dismissed. Sewell clearly testified in his deposition that the harassment of him was not based upon race or gender, but because he was being defiant. There is evidence of harassment by

9

MCSB officials of Sewell, but no evidence has been presented that shows MCSB officials committed intentional discrimination under Title VI and Title IX based upon race or gender.

Sewell has simply provided no evidence in his Opposition to MCSB's Motion for Summary Judgment, which would set forth a *prima facie* case of harassment based on race or gender. The findings and/or investigation of the United States Department of Education Office of Civil Rights ("OCR") do not create a material issue of fact. Whether a private litigant asserts actionable claims under Title VI or Title IX and meets their burden of proof is determined using jurisprudential standards. Administrative findings of OCR in 2016, are not based upon jurisprudential standards under Title VI and Title IX.

The Opposition filed by Sewell attached an Affidavit of Shelling, deposition of Sewell, Kirk, Vidrine, and Moore, along with an email from Kirk to Vidrine on December 7, 2016. The attachments create a material issue of fact of harassment of Sewell, but not that Sewell was harassed due to his gender or race.

Therefore, the MCSB is entitled to summary judgment in this proceeding.

### III. CONCLUSION

For the reasons set forth herein, the Monroe City School Board's Motion for Summary Judgment [Doc. No. 81] is GRANTED.

MONROE, LOUISIANA, this 21st day of October 2021.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE